# NEW YORK—APRIL, 1878. 35

The Orphan Asylum Society in the City of New York v. Waterbury.

The Orphan Asylum Society in the City of New York, Appellants, *against* Benjamin Waterbury, Respondent.

(Decided April 1st, 1878.)

In a lease of twenty-one years, it was covenanted that if the tenant, during the first seven years, or, if the landlord consented, any time during the residue of the term, should erect upon the land a house *two* stories or more in height, and constructed as therein specified, that the landlord, at the end of the term, would pay for the value of the building, or give a further term of twenty-one years ; and that said second lease should provide for a further renewal of twenty-one years, in all cases in which there should be erected, and then standing on the premises, a substantial dwelling-house *three* stories or more in height, constructed as the law required in the part of the city where the premises were located; or if the landlord should not agree to such third renewal, that he would pay the value of the building. At the expiration of the first lease, the landlord agreed and did grant a renewal for the further term of twenty-one years, which renewed lease recited that, as the parties could not agree upon the construction of the covenants in the first lease, as to what covenants were to be inserted in the renewed lease, it was, to avoid dispute, agreed that the second lease should contain all the covenants which, according to the true construction of the first lease, it should contain. *Held,* that the omission in the second lease of the condition in respect to a further renewal did not make it obligatory, under the second lease, that the plaintiff should give a third lease of twenty-one years, with a covenant for renewal provided a dwelling-house of three or more stories should then be standing ; that the true construction of the meaning of the language employed was, that if the landlord did not at the expiration of the first lease give a second one, he should pay for the *two*-story building ; and that if a dwelling-house of *three* or more stories should be erected and standing at the expiration of the second lease that he would give a further lease for twenty-one years, or pay for the three-story building, if such a building had been erected and was then on the premises ; that the instrument simply provided for the contingency of two renewals, and had no provision in it for anything beyond that.

A written lease is to be construed, if possible, so as to give effect to the intention of the parties, which is to be gathered from the whole instrument.

Appeal from an order made by this court at special term, overruling a demurrer to the answer and giving judgment for the defendant.

This was an action of ejectment brought by the Orphan Asylum Society to recover possession of certain land on Broadway, in the city of New York.

The Orphan Asylum Society in the City of New York v. Waterbury.

The complaint alleged ownership in the plaintiff; that the term of the defendant as lessee of the premises had expired on May 1st, 1876, and that he withheld possession from the plaintiff. The complaint set forth a copy of the lease, which was dated April 30th, 1855, and was for a term of twenty-one years; and it was further alleged that, as provided by the law, appraisers had been appointed by plaintiff and defendant to value the house standing on the land and the value of rental for another term; that the appraisers had disagreed; that an umpire, as provided in the lease, had fixed those values; that plaintiff had elected to pay for the building, had tendered the amount fixed by the umpire; and, that defendant had refused to accept, or to surrender possession.

The answer admitted these averments, and set up by way of avoidance that plaintiff leased the lot to Peter Missillier for twenty-one years from 1st May, 1834; that Missillier assigned it to defendant; that during the first seven years of that term, a building two or more stories high was erected on the lot, and was standing at the end of the term, May 1st, 1855; that the plaintiff then elected to renew for a second term instead of paying for that building; that the new lease for the second term ought to have provided positively and absolutely for its renewal for a third term, from May 1st 1876, without any option to plaintiff to pay the value of any building on the lot; that plaintiff refused to give such a new lease and gave instead the instrument dated 30th April, 1855.

The plaintiff demurred, on the grounds that the answer did not state facts sufficient to constitute a defence. The sufficiency of the answer depended upon the construction of certain provisions of the lease of April 30, 1855, which embodied, word for word, the lease to Missillier of May 1st, 1834.

The Missillier lease contained the following: "And it is hereby mutually covenanted and agreed by and between the parties to these presents, that if the said party of the second part, his executors, adminstrators or assigns shall, during the first seven years of the said term hereby demised, or if the

said parties of the first part shall consent thereto in writing, then at any time during the residue of the said term erect and build upon the said lot of land a good and substantial house, being two stories or more in height, and constructed of brick or stone, or having a brick or stone front, and otherwise constructed as shall be permitted by law, then the said parties of the first part or their assigns shall and will at the end and expiration of the term hereby demised either pay to the said party of the second part, his executors, administrators or assigns, the just and full value of the said house, to be ascertained in the manner hereinafter mentioned, or grant a new lease to the said party of the second part, his execu tors, administrators or assigns, at his or their expense, for a further term of twenty-one years, to commence from the expiration of the term hereby granted, at and for a reasonable yearly rent, payable half yearly, and to be also ascertained as in hereinafter mentioned, but not to be less than the rent reserved by these presents, such new lease to contain the like covenants, provisoes and conditions as are hereinbefore contained, except only so far as regards a further renewal of the said lease and the payment of the value of any house or building to be erected on the said demised premises; but providing nevertheless for the further renewal of the said lease at the like expense of the said party of the second part, his executors, administrators or assigns, for the further and like term of twenty-one years from and after the expiration of the said second term, and at a yearly rent, to be ascertained in like manner (but not less than the yearly rent reserved during said second term), in all cases in which there shall have been erected during the term hereby demised, and shall then be standing on the said demised premises, a good and substantial dwelling-house, being three stories or more in height, and constructed as the law now requires with respect to dwelling-houses in the said city, situate to the southward of Canal street; or for the payment of the just · and full value of such dwelling-house (to be ascertained in like manner) in case the said parties of the first part, their successors or assigns, shall not agree to such further renewal;

and in order to ascertain the value of any such house as during the term hereby granted, may be erected on the said demised premises aforesaid, and what augmentation of rent if any should take place in case of granting any such new lease ; it is further mutually agreed by and between the said parties, that each of them or their assigns shall and will at least one month before the expiration of the term hereby granted, nominate a fit and impartial person to value the said house in its then condition, and to determine also what would be a reasonable yearly rent for the said lot of ground during the further term aforesaid, if such term should be granted, and if the said two persons should differ in judgment upon the said subjects or either of them, they shall appoint a proper person to be the umpire between them ; or if they cannot agree in such nomination, they shall each of them nominate two persons, and, from the names of the four persons so nominated, one shall be drawn by ballot to be such umpire, and the decision of the said two persons first named, or, in case of their disagreement, of the said umpire, shall be final and conclusive, both as to the value of the said house and the amount of rent to be inserted in the new lease, if the said parties of the first part shall prefer to grant the same : and in every such case of renewal, the rent to be reserved thereon shall be estimated for the lot alone, without making any addition for or on account of the buildings which may be so erected by the said party of the second part, his executors, administrators or assigns.

" And the lease of April 30th, 1855, embodying the above lease recited, that whereas said parties hereto of the first part have, in pursuance of the provisions in that behalf contained in the said above recited indenture which was for the first term, agreed to grant to the said party of the second part a renewal of the said indenture for the further term of twenty-one years from the expiration of the term thereby granted, at the yearly rent of two thousand nine hundred dollars, payable half yearly : and whereas' the said parties to these presents do not agree in their construction of the provisions, contained in the hereinbefore recited indenture

of lease, which relate to the covenants to be inserted in the lease for the second term therein referred to—' such new lease,' &c.,—to avoid dispute in regard to the terms of the covenants this lease should contain, it is hereby expressly mutually covenanted and agreed by and between the parties to these presents, that this present indenture of lease shall be deemed to be upon and to contain all and singular the covenants, provisoes and agreements which, according to the true construction, intent and meaning and effect of the hereinbefore recited indenture of lease (this lease being the new lease for the second term therein mentioned and provided for), such new lease was to contain, the said parties to these presents hereby agreeing to and granting all and singular the said covenants, provisoes, conditions and agreements as fully and to the same effect as if the same were herein inserted fully and expressly at full length."

*R. W. De Forest*, for appellants.

*Benjamin F. Dunning*, for respondent.    The Missillier lease provides for four successive terms of twenty-one years. At the termination of the first twenty-one years plaintiff had the option to grant a *new lease* for twenty-one years or to pay for building, &c.   It determined to grant a new lease, and thereby became obliged to renew the same for a third term. Such renewal should provide that if at the termination of the third twenty-one years a dwelling-house three stories, &c., high, &c., erected during said term, shall be standing on the premises, the plaintiff shall either pay the value, &c., or grant a further renewal for a fourth term of twenty-one years.   The plaintiff thus possessed an option at the expiration of the first twenty-one years, and will also at the expiration of the third twenty-one years, but at no other time. The plaintiff only agreed to pay for a building, &c., when (having the option either to renew or pay) it refused to renew, and this could only occur at the end of the first and third terms.

CHARLES P. DALY, Chief Justice.—The effect which the

defendant insists should be given to the omission in the second lease of the condition in respect to a further renewal or the payment of the value of the building; that is, that this omission makes it obligatory under the second lease that the plaintiffs should give a lease for a third term of twenty-one years; and at the expiration of the third term, give a further lease for a fourth term of like duration, provided a dwelling-house should have been erected of three stories or more in height, which should then be standing, or pay the just and full value of the said dwelling-house,—is what, in my judgment, was never contemplated by the parties who entered into the first lease, being in no way deducible from the language of that instrument.

What the parties meant by the language employed was, that if the plaintiff did not, at the expiration of the first lease, give a second one for twenty-one years, they should pay for the *two*-story building, for the erection of which provisions had been made, and that if a dwelling-house of *three* or more stories in height should be erected and be standing at the expiration of the second lease, they should give a further lease for twenty-one years or pay for that dwelling-house.

It was, in the first place, provided in the original instrument, that if the tenant should, within the first seven years of the term, or if the plaintiffs should consent thereto in writing then at any time during the residue of the term, erect a good and substantial house of brick or stone, or one with a brick or stone front, which should be two stories or more in height, the plaintiffs should either pay the just and full value of that building or give a second lease for the like term of twenty-one years. In the second place, it was provided that if, instead of paying for the building, the plaintiffs should elect to give a further lease for twenty-one years, that then the new lease should contain the like covenants, conditions and provisions as the first lease, except so far as regarded a further renewal of the first lease, and the payment of the value of any house or building that might be erected;—for the obvious reason that in the event of the plaintiffs determining to give a new lease,

the parties had provided in the instrument what should take place at the expiration of the second lease in respect to a third lease, which was this: that there should be after the expiration of the second term a further renewal for twenty-one years, making sixty-three years in all, if there should be erected upon the lot, during the term demised, and it should be standing at the end of the second lease, a good and substantial dwelling-house *three* stories or more in height, constructed as the law required in respect to dwelling-houses south of Canal street, or else that the plaintiffs should pay the just and full value of that dwelling-house. It was also further provided, that in case of the granting of any such third lease, the augmentation of rent, if any, should be determined by arbitrators; and that if the plaintiffs did not agree to that further renewal, that then the value of the three-story dwelling-house should in like manner be ascertained by arbitration.

This is, I think, the plain meaning of these provisions in the original lease. They provide for the contingency of two renewals and no more, neither of which, however, was obligatory upon the plaintiffs, they having the option to pay for the *two*-story house instead of giving the first renewal, or to pay for the three-story dwelling-house instead of giving the second renewal—the parties having entered into these covenants in contemplation of the existence of the first of these structures at the end of twenty-one years, or of the existence of the other at the end of forty-two years, if the original lease was renewed. There is no reference to a third renewal, nor anything in the language from which it can be inferred that it was contemplated by either party. The first provision is for a renewal of the term " *hereby demised*," which is a renewal of the original lease, for a further term of twenty-one years; and the next provision is for a further renewal of the said lease for a term of twenty-one years "*from and after the expiration of the said second term.*" That is all there is in respect to renewals, and I wholly fail to see how it is possible to make out of this language an obligation, as Judge ROBINSON holds, to give a lease absolutely for a third term

without any further condition either as to a further renewal or as to a building, or, as the defendant claims, to give such a lease, and also a lease for a fourth term, or pay then for the three-story dwelling-house.

The defendant claims that the use of the words "*in all cases*," shows that there was to be a renewal for a fourth term or else the payment for the three-story dwelling-house. The language of this part of the first lease is "providing" (that is, providing in the second lease), "for the further renewal of the said lease, &c., * * for the further and like term of twenty-one years, from and after the expiration of the said second term, &c., &c., * * * *in all cases* in which there shall have been erected during the term hereby demised, and shall then be standing on the said demised premises, a good and substantial dwelling-house, being three or more stories in height," &c., &c. * * * It is not very clear what the parties meant in this conveyance by the words "*in all cases;*" but the obscurity is not cleared up by the construction which the defendant puts upon the words. My interpretation is that what was meant by them was—in all cases—whether a three-story dwelling-house, as specified, is erected during the first term instead of the two-story house, or if a two-story house has been erected during the first term and a three-story dwelling-house is afterwards erected during the second term, and that dwelling-house is standing at the end of the second term; then the plaintiff shall either pay for that dwelling-house or give a lease for a third term of twenty-one years.

The tenant was not restricted to the putting up of a two-story house during the first term. The words were "a house of two or more stories," so that he might put up one of three stories or more; nor was he restricted as to the kind of house, except that it was to be of brick or stone, or with a brick front, and he was consequently at liberty, if he thought proper to do so, to put up, during the first term, a dwelling-house of three stories or more in all respects conforming to the law respecting buildings upon Broadway south of Canal street, and if he had done so the plaintiffs, at the end of the first term, would have been equally bound to pay for it or

give a lease for a second term, as if he had erected simply a two-story house of any kind of brick or stone, or with a brick front. What the plaintiff evidently had in view was the improvement of his property, and whilst securing the defendant by the covenant for the payment of the value of the building that might be upon the premises at the end of the lease, the inducement of a third term of twenty-one years was held out if the tenant put a dwelling-house of three stories or more in height upon the lot, or the payment of the first and full value of the dwelling-house at the end of the second term. Whatever he did, then, in ' *all cases* ' if a dwelling-house of three or more stories in height was standing at the end of the second term, the plaintiff was either to pay for it or give him a lease for a further term of twenty-one years. But whatever construction may be put upon these words " in all cases," they are to be read in connection with the whole provision, and that provision clearly and distinctly declares that the further lease, unless the plaintiff pay the just and full value of the dwelling-house, if one has been erected and is then standing, is a lease for twenty-one years, from and after the expiration of the second lease, and there is no pro vision in the original instrument for anything beyond that.

For these reasons I am of opinion that the judgment upon the demurrer should be reversed.

VAN HOESEN, J., concurred.

Judgment reversed.